IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

AARON A. EDISON,

    Petitioner,

v.                                         Case No. 2:18-cv-00411

STATE OF WEST VIRGINIA ex rel.
WV DEPT. OF HEALTH AND HUMAN SERVICES
BUEAU OF CHILD SUPPORT ENFORCEMENT, and
CAROLIN M. DOTSON,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**PROCEDURAL HISTORY**

The petitioner filed the instant "Petition to Appeal" (ECF No. 1) in the United States District Court for the Northern District of West Virginia on June 27, 2017. At that time, he was in custody at the North Central Regional Jail. The matter was transferred to this court on March 9, 2018. (ECF No. 22). Prior to the transfer, the petitioner clarified that it was his intent "to pursue both an appeal of the decision of the West

Virginia Supreme Court of Appeals . . . as well as file a Section 2254 [petition]." (ECF No. 15 at 2).[1]

On May 19, 2017, the Supreme Court of Appeals of West Virginia (the "SCAWV") issued a Memorandum Decision in a case concerning the appeal of the petitioner's criminal conviction, following his guilty plea to a misdemeanor count of failure to pay child support in the Circuit Court of Wirt County, West Virginia. Mem. Decision, *State v. Edison*, No. 16-0376 (W. Va. May 19, 2017) (attached hereto as "Court's Ex. A"). The Memorandum Decision provides the following summary of the facts surrounding the petitioner's conviction:

> A.J.D. [footnote omitted] (or "the child") was born on July 16, 2003. On March 10, 2007, petitioner was served with a civil complaint filed in the Family Court of Wirt County for paternity, child support, and reimbursement regarding the child. [FN 2 – That civil case was styled *State of West Virginia ex rel. West Virginia Department of Health and Human Resources, Bureau of Child Support [A.J.D.'s mother] v. Aaron A. Edison*; No. 07-D-11.] Thereafter, petitioner was thrice scheduled for paternity testing, but failed to appear each time despite proper notice. Petitioner also failed to appear at a properly noticed January 24, 2008, family court hearing on the complaint. In the February 7, 2008, order resulting from that hearing, the family court found that, since her birth, the child has been in her mother's physical custody and that petitioner is the child's biological father. With regard to child support, the family court found that, for the period from March 1, 2004, through January 31, 2008, petitioner owed $9,005.20 in reimbursement child support; and that, as of February 1, 2008, petitioner's ongoing child support obligation for the child would be $191.60 per month, which petitioner had the ability to pay.
>
> Petitioner appealed the family court's order to the circuit court, which denied relief on April 14, 2008. Petitioner did not appeal the circuit court's denial of relief to this Court. Thus, the family court's order became final in 2008.
>
> This criminal case began when petitioner was indicted on March 31, 2004, on one count of felony failure to pay child support for the child in

---

[1] Since the filing of his petition, the petitioner was released from his term of incarceration on his misdemeanor sentence and has provided an address in Marietta, Ohio. Nonetheless, because he was in custody when he filed the petition, this court treats the petitioner as being "in custody" for the purpose of his claims for relief under 28 U.S.C. § 2254.

violation of West Virginia Code § 61-5-29(2).  On May 1, 2014, petitioner filed a "Motion to Suppress and Quash the Indictment."  The motion to suppress regarded unspecified "documents/records."

At some point, petitioner filed a pro se petition for the voluntary termination of his parental rights to the child apparently in his civil child support proceeding.  [FN 3 – No such petition for voluntary termination of the child is contained in the record on appeal.  However, the petition is referenced in the transcript of the August 14, 2014, hearing, which is contained in the record on appeal.]  At an August 14, 2014, hearing on that civil petition, petitioner argued the following:  First, the family court erred in finding that he is the child's biological father absent a genetic test so proving.  Second, even if he is the child's biological father, he surrendered and terminated his parental rights to the child under the Safe Haven Act, West Virginia Code §§ 49-6E-1 to -5 (2000).  [FN 4 omitted].  In support of this claim, petitioner testified [FN 5 omitted] as follows:  He was not married to the child's mother.  When the child was born, he received a call from a hospital social worker who asked if he wished to be named as the child's father on her birth certificate.  He told the social worker he did not want his name on the birth certificate and that he was relinquishing his parental rights and any responsibilities to the child under the Safe Haven Act.  He received notice of each of the three scheduled paternity tests, but refused to take a paternity test on the ground that it would have violated his right to anonymity under the Safe Haven Act.  At the conclusion of the hearing, the circuit court denied petitioner's civil petition for voluntary termination of this [sic; his] parental rights.

Thereafter, in the instant criminal case, the circuit court denied petitioner's motion to suppress "documents/records" and to quash his indictment by order entered January 12, 2016.  One week later, at petitioner's plea hearing, the circuit court reviewed petitioner's rights and his understanding of the charges and the plea agreement.  Thereafter, petitioner entered a conditional plea to misdemeanor failure to pay child support, but maintained his right to appeal the circuit court's ruling on his motion to suppress and to quash the indictment.  The circuit court accepted petitioner's plea and found it to be knowing, intelligent, and voluntary.

At petitioner's March 15, 2016, sentencing hearing, the circuit court denied petitioner's motion to withdraw his guilty plea to misdemeanor failure to pay child support and sentenced petitioner to one year of incarceration.  The court also ordered petitioner to pay the child's mother $29,539.58 in "restitution."  This appeal followed.

On appeal, petitioner argues that the circuit court erred in failing to grant his motion to suppress and to quash the indictment, and erred in finding that the Safe Haven Act, West Virginia Code §§ 49-6E-1 to -6

    (2000) ("the Act") could not be used as a defense to a criminal charge of failure to pay support to a minor.

Court's Ex. A at 1-3. The SCAWV then made the following rulings:

> On appeal, petitioner argues that he relinquished his parental rights to the child within thirty days of her birth pursuant to the Safe Haven Act, and therefore, he never had any financial duty to support the child.
>
> We wholly reject petitioner's argument that he relinquished his parental rights and any duty to support the child under the Safe Haven Act because it does not apply in this case. First, no hospital or healthcare facility ever took possession of the child pursuant to West Virginia Code § 49-6E-1. Instead, as the family court's 2008 order provides, the child's mother has had physical possession of the child since her birth. Therefore, DHHR never took "care, control, and custody of the child" pursuant to West Virginia Code § 49-6E-2 (2000); never found the child to be abandoned or filed a child abuse and neglect proceeding on her behalf as required by West Virginia Code § 49-6E-3 (2000); and the child was never eligible for adoption pursuant to West Virginia Code § 49-6E-5 (2000).
>
> The Legislature designed the Safe Haven Act to protect the safety and health of a child within the first thirty days of his or her life. The Legislature did not design the Act to be a mechanism by which a parent, who has *not* relinquished the care, custody, and control of a child in accordance with the Act, may avoid paying child support. In fact, the Act does not mention child support at all. Therefore, under the facts of this case, petitioner may not use the Act as an escape route to avoid paying child support where a court has found he has the ability to pay that support.

*Id.* at 4. The Memorandum Decision further noted that the petitioner repeatedly chose not to take a paternity test to prove or disprove his parentage of the child and failed to timely appeal the state courts' orders concerning the child support allegedly owed, which are now final. *Id.* According to his instant petition, the petitioner's request for a rehearing by the SCAWV was denied on June 22, 2017. (ECF No. 1 at 7).

    The petitioner's instant petition appears to challenge the state courts' decisions on the basis that men are denied equivalent rights to women with respect to child support responsibilities and are "forced into parental responsibilities by the state's child

4

support laws and policies." (ECF No. 1 at 9). Thus, he contends that the state courts' decisions resulted in gender discrimination in violation of his Fourteenth Amendment right to equal protection and should be reversed. His petition further asks that "the capias for which I'm incarcerated be dismissed or at a minimum stayed" and that he be released from custody. (*Id.* at 11).

The document clarifying his claims further states as follows:

> It is this petitioner's intent to overturn the WV Supreme Court of Appeals decision as well as quash the indictment and have the case dismissed based on constitutional rights violations on the part of the Wirt County Family Court, Wirt County Circuit Court, and WV Supreme Court of Appeals.
>
> It is the intent of this petitioner to sue the State of West Virginia for wrongful and illegal incarceration as a result of these constitutional rights violations as well as sue his appointed counsel, Keith White, for deliberate misrepresentation when editing the petitioner's brief against this petitioner's insistence that his petitioner's brief be filed in its original form including his constitutional rights violations arguments when the case was presented to the WV Supreme Court.
>
> It is the intent of this petitioner to sue the State of West Virginia and other respondents for all damages brought on by such gender based discrimination to include but not limited to all monies extorted from this petitioner in the form of child support, loss of income, loss of education benefits, any and all compensatory damages, etc.
>
> It is the intent of this petitioner to prove color of law criminal actions on the part of judges and attorneys from both the Wirt County Family and Circuit Courts.

(ECF No. 15 at 3-4).

## ANALYSIS

### I.     **This court lacks jurisdiction to consider the petition for appeal.**

The instant petition and additional documentation filed by the petitioner clearly demonstrate the petitioner's intent to "appeal" and "overturn" the May 19, 2017 Memorandum Decision of the SCAWV. However, this court is without jurisdiction to

address the petitioner's claims under the *Rooker-Feldman* doctrine. The Supreme Court made clear in *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), that federal courts are divested of jurisdiction "where entertaining the federal claim should be the equivalent of an appellate review of [a] state court order." *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196-98 (4th Cir. 2002) (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) (*Rooker-Feldman* applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court"). More recently, the Supreme Court reiterated that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff is challenging final state court orders concerning child support issues, and that this court's review of those decisions clearly amounts to an appeal therefrom, which is barred by the *Rooker-Feldman* doctrine. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss the petitioner's Petition for Appeal for lack of jurisdiction under the *Rooker-Feldman* doctrine. The petitioner's proper avenue for review of the child support order would have been to file an appeal of the circuit court's order to the SCAWV back in 2008. However, the plaintiff acknowledges that he did not file such an appeal.

6

## II. The petitioner's section 2254 petition is unexhausted.

The petitioner's clarifying documentation (ECF No. 15) indicates that he also wished to have his petition treated as a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 seeking to overturn his misdemeanor conviction for failure to pay child support and quash his indictment. However, the petitioner cannot seek habeas corpus relief under section 2254 unless and until he has exhausted similar remedies available in the state courts. Section 2254 of Title 28 provides, in pertinent part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
>
>> (A) the applicant has exhausted the remedies available in the courts of the State . . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1)(A), (c).

The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Where a petitioner has failed to exhaust state court remedies, the federal petition should be dismissed. *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973)).

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling in the SCAWV. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D. W. Va. 1995);

*McDaniel v. Holland*, 631 F. Supp. at 1545. A prisoner may also exhaust the state court remedies by filing a petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV. However, an original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the prisoner's state court remedies. *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (abrogated on other grounds, *Trest v. Cain*, 522 U.S. 87 (1997).

Liberally construing the petitioner's filings herein, it appears that he is making two claims which could be treated as seeking habeas corpus relief. First, the petitioner appears to be contending that his prosecution and incarceration for failure to pay child support violated his right to equal protection under the Fourteenth Amendment. Second, the petitioner's documentation claims that his appellate counsel, Keith White, failed to incorporate his *pro se* arguments into his appellate brief filed with the SCAWV, which amounts, at best, to a claim of ineffective assistance of counsel, governed by the Sixth Amendment.

Neither of these claims were raised in the petitioner's criminal appeal. Rather, the court simply addressed a claim of trial court error in denying the petitioner's motion to dismiss or quash his indictment and finding that the Safe Haven Act was inapplicable to serve as a defense to his criminal charge of failure to pay child support. The petitioner's appeal does not appear to specifically address or exhaust any equal protection argument, and any clam of ineffective assistance of appellate counsel would have been required to be raised in a subsequent habeas corpus petition. The undersigned's staff has confirmed that the petitioner did not file any habeas corpus petitions, in either the Circuit Court of Wirt County or the SCAWV, following the

decision in his criminal appeal and prior to filing the instant petition. Thus, the undersigned proposes that the presiding District Judge **FIND** that, to the extent that the petitioner is seeking relief under 28 U.S.C. § 2254, his claims for relief are unexhausted and must be dismissed.

Moreover, the undersigned notes that the petitioner discharged his sentence, has been released from custody, and can no longer seek habeas corpus relief in the state courts with respect to his misdemeanor conviction for failure to pay child support. Nevertheless, he is not without remedy in the state courts, as he may be able to pursue relief through a petition for a writ of error *coram nobis* in the state courts, if such a remedy is recognized. 689 F.3d at 339. However, a federal court cannot grant *coram nobis* relief on a state court conviction. *See, e.g., Thomas v. Cunningham*, 335 F.2d 67, 69 (4th Cir. 1964); *In re Shelton*, 1 Fed. App'x 149 (4th Cir. 2000) (per curiam) (unpublished); *Campbell v. DeWalt*, 2010 WL 2901874 at *2 (S.D. W. Va. July 21, 2010) (federal district courts lack jurisdiction to issue writs of error *coram nobis* to set aside judgments of state courts). Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that this federal court also lacks jurisdiction to consider the petitioner's petition as one for *coram nobis* relief.

### III. The petitioner cannot successfully pursue a claim for damages against any of the respondents under 42 U.S.C. § 1983.

The documents filed by the petitioner further contend that he intended to sue the State of West Virginia and other respondents for monetary damages. However, he is barred from doing so for several reasons, which the undersigned will address in turn.

### A. *Heck* bar.

First, the petitioner is presently barred from pursuing any claim for damages arising out of his alleged wrongful prosecution and incarceration for failure to pay child support. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff suing under 42 U.S.C. § 1983 must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under section 1983. As noted above, the petitioner's criminal conviction has not been invalidated by any of these means.

Therefore, because the plaintiff's Complaint seeks monetary damages and his allegations appear to bear on the validity of his criminal proceedings, he may not seek such damages under section 1983 unless and until he can show that his conviction and sentence have been invalidated. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's claims for monetary damages are barred under *Heck*.

### B. **Eleventh Amendment Immunity.**

Additionally, the claims against the State of West Virginia, its Department of Health and Human Services, and its Bureau of Child Support Enforcement are barred by the Eleventh Amendment to the United States Constitution, which provides that "the judicial power of the United States shall not be construed to extend to any suit in law or

10

equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., Amend. XI.[2] It is clear that, regardless of the relief sought, the Eleventh Amendment bars suits by private citizens against a state, its agencies, or its officials, in federal court, unless the state has specifically waived its right to immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-99, 101 (1984).

A state can only waive its sovereign immunity by unequivocal expressions or actions. *Id.* at 99; *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1921). Similarly, Congress can abrogate a state's immunity only where it has unequivocally expressed its intent to do so, and only where it has validly exercised its power. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996).

The plaintiff has not raised any claims under any statute in which Congress has clearly and unequivocally abrogated the State's Eleventh Amendment immunity, and the petitioner has failed to assert a meritorious argument that the State of West Virginia respondents have waived sovereign immunity. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the State of West Virginia and its Department of Health and Human Resources and Bureau of Child Support Enforcement are immune from suit in this federal court under the Eleventh Amendment to the United States Constitution.

---

[2] ##Although not expressly stated in the amendment, the Eleventh Amendment has been held to bar suits against a state, or its officials, by its own citizens as well. *See Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). Such is the case here.

### C. Carolin Dotson is not a state actor and the petition fails to state any plausible claim for relief against her.

It is clear from the face of the petition documents that Carolin M. Dotson is the mother of A.J.D., the child who is the subject of the petitioner's support orders and the criminal conviction for failure to pay child support. However, Ms. Dotson was not acting under color of state law; thus, she cannot be sued for damages under 42 U.S.C. § 1983. Moreover, the petition alleges no conduct by Ms. Dotson beyond stating that she is the child's mother. Thus, the undersigned proposes that the presiding District Judge **FIND** that the petition fails to state any plausible claim for relief against Ms. Dotson.

### D. The state court judges are absolutely immune from civil liability for their judicial decisions.

Although not specifically named as respondents in the style of the petition, to the extent that the petitioner's documentation seeks any claims for damages against the state court judges who made the rulings in his family court and criminal proceedings, those judges are entitled to absolute immunity from suit because they are judicial officers who were engaged in official judicial duties in connection with those proceedings. It is firmly settled that judges are immune from liability for damages for acts committed within their judicial jurisdiction, even when the judge is accused of acting maliciously and corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). The *Pierson* Court further found that:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making, but to intimidation.

12

> We do not believe that this settled principle of law was abolished by § 1983, which makes liable "every person" who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities.

*Id.* Thus, to the extent necessary, the undersigned proposes that the presiding District Judge **FIND** that the judicial officers involved in the petitioner's family court and criminal proceedings are immune from any civil liability arising out of those decisions.

## IV. The petitioner cannot pursue criminal prosecutions.

To the extent that the petitioner's documentation further suggests that he seeks to "prove color of law criminal actions on the part of judges and attorneys from both the Wirt County Family and Circuit Courts" (ECF No. 15 at 4), the petitioner is advised that this court cannot initiate criminal prosecutions, and such relief may not be pursued in a civil action such as this. Any criminal liability must be initiated and pursued by state or federal prosecuting attorneys. Thus, this court makes no further findings with respect to that allegation in the petition documents.

## RECOMMENDATION

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the petitioner's hybrid "Petition for Appeal" and "Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254" (ECF No. 2) and **DISMISS** this civil action from the docket of the court.

The petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the petitioner shall have fourteen days (filing of objections) and three days

(mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the petitioner.

November 5, 2019

Dwane L. Tinsley
United States Magistrate Judge